THE STATE v. McG. MANNING.

*Selling Mortgaged Property—Intent—Evidence—The Code,* §1089.

Where the disposition by the mortgagor of any property embraced in a chattel mortgage necessarily results in hindering, delaying or defrauding the mortgagee, it will be presumed that the intent to produce such result existed, and an instruction to the jury that everyone is conclusively presumed to intend the consequences of his act would be correct; but where such result would not naturally or necessarily follow from the act alleged—*e. g.*, that sufficient property remained, subject to the mortgagee, to pay the debt—the intent with which the disposition was made is a question of fact to be passed upon by the jury, under section 1089 of *The Code.*

This was a CRIMINAL ACTION, under section 1089 of *The Code,* tried at June Term, 1890, of PITT Superior Court, *Boykin, J.,* presiding.

The facts are stated in the opinion.

*The Attorney General,* for the State.
*Mr. James E. Moore,* for the defendant.

SHEPHERD, J.: The defendant mortgaged a mule and other property to one Keel, and disposed of the mule while the mortgage was in force. There was evidence tending to show that at the time of the disposition of the mule the other property included in the mortgage was sufficient to pay the mortgage debt.

The defendant asked the Court to charge the jury that the "mere selling or trading the mule did not make (him) guilty"; that "they must find that he did it with intent to hinder, delay or defraud the right of the mortgagee."

His Honor instructed the jury that while it was true that the act must be accomplished, with the intent as charged, the law presumed such intent if the act was "wilfully and knowingly done," and "that everyone was conclusively presumed (to have) intended the consequences of his acts."

This is undoubtedly correct as a general proposition, but its unqualified application in the present case was, we think, erroneous, as his Honor assumed to be true a very important fact, which should, under proper instructions, have been submitted to the jury. This was whether the selling of the mule would have naturally or necessarily resulted in the consequences mentioned, to-wit, the hindering, delaying or defrauding the rights of the mortgagee.

The statute (*The Code,* § 1089), under which the indictment is drawn, is essentially different from those which make the simple doing of a forbidden act unlawful, as in the cases of removal or disposal of crops before the liens of the landlord are satisfied, the sale of spirituous liquor without license and the like. Under this statute the forbidden act must, in order to be indictable, be accomplished with a specific intent,

and the Courts cannot disregard this clearly expressed purpose of the Legislature.

Now it is very plain, as stated by his Honor, that if an act must necessarily produce a certain result, it must be presumed that such a result was intended, but whether such a result necessarily follows an act must, as we have said, be first found by the jury before the presumption can arise.

If the property included in the mortgage (other than the mule) was abundantly sufficient and available to pay the indebtedness, there could be no such prejudicial result as is contemplated by the statute. Suppose five hundred dollars' worth of property is mortgaged to secure a debt of ten dollars; can it with reason be said that a disposition of a small part of the property would necessarily hinder, delay or defraud the mortgagee? This would be applying a much harsher rule of construction to a penal statute (which, of course, must be construed strictly) than is recognized in the trial of civil cases for the fraudulent disposition of property, and we cannot believe that such was the intention of the Legislature.

This view also finds support in the language of the latter part of the statute in which it is provided that upon the failure of an officer, after diligent search, to find the property, or the failure to produce it upon the demand of the mortgagee, there should be only a *prima facie* case as to the disposition and intent.

To further illustrate, take for instance the case of *State* v. *Barbee*, 92 N. C., 820, in which the defendant was indicted for shooting at a railroad train with intent to injure the car, etc. If the shooting had been done from a point a mile distant from the train, the Court would have erred in telling the jury that the law presumed the intent from the act of shooting, but it was properly left to the jury to say whether the act was done in such close proximity to the train as to "naturally and necessarily result" in such

injury, in which case the law would have presumed that the defendant intended the consequences of his act.

His Honor, in the present case, after stating these general propositions of law should have directed the jury to determine what were the necessary consequences of the disposition of the mule, and in doing this that they should consider the amount of the debt, the value and the availability of the undisposed property and its character, and if they believed that the disposition of the mule would naturally or necessarily result in the hindering, delaying or defrauding of the debt, the law presumed that the defendant intended such a result.

What we have said has reference only to the presumption of intent; for, no matter how much property may be reserved, if the actual criminal intent be proved, the defendant would be guilty.

New trial.